**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

| | | |
|---|---|---|
| JACQUELINE M. HINOJOSA, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 2:16-CV-202-JEM |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of the | ) | |
| Social Security Administration, | ) | |
|     Defendant. | ) | |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff on June 3, 2016, and Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 16], filed on November 14, 2016. Plaintiff requests that the decision of the Administrative Law Judge be reversed and remanded for further proceedings. On January 18, 2017, the Commissioner filed a response, and on February 7, 2017, Plaintiff filed a reply. For the following reasons, the Court grants Plaintiff's request for remand.

**I.    Procedural Background**

On October 9, 2012, Plaintiff filed an application for benefits alleging that she became disabled on June 21, 2006. Plaintiff's application was denied initially and upon reconsideration. On May 22, 2014, Administrative Law Judge ("ALJ") Rebecca LaRiccia held a video hearing at which Plaintiff, with an attorney representative, a medical expert, and a vocational expert ("VE") testified. On October 24, 2014, the ALJ issued a decision finding that Plaintiff was not disabled. The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner.

The ALJ made the following findings under the required five-step analysis:

1. The claimant has not engaged in substantial gainful activity since October 9, 2012, the application date.

2. The claimant has the following severe impairments: possible systemic lupus erythematosus and gastroparesis.

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

4. The claimant has the residual functional capacity to perform sedentary work with exceptions: the claimant is able to lift 10 pounds occasionally and up to 10 pounds frequently, stand and/or walk for up to 2 hours in an 8-hour work period and sit up to 6 hours in an 8-hour work day. The claimant is capable of frequent, but not constant overhead reaching. She can occasionally climb ramps and stairs, but never ladders, ropes, or scaffolds. The claimant can occasionally balance, stoop, kneel, crouch, and crawl. The claimant must avoid concentrated exposure to wetness and is to avoid the operation of heavy machinery and unprotected heights, and is not to work in the sun.

5. The claimant is unable to perform any past relevant work.

6. The claimant was 32 years old, which is defined as a younger individual age 18-44, on the date the application was filed.

7. The claimant has at least a high school education and is able to communicate in English.

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled" whether or not the claimant has transferable job skills.

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

10. The claimant has not been under a disability since October 9, 2012, the date the application was filed.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case.

Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## II.     Standard of Review

The Social Security Act authorizes judicial review of the final decision of the Agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings."

3

*White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his or her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## III. Analysis

Plaintiff argues that the ALJ erred in determining Plaintiff's RFC and in determining that her mental impairments are not severe. The Commissioner argues that the ALJ's decision is supported by substantial evidence.

Plaintiff has been diagnosed with anxiety, depression, and PTSD. Plaintiff's treating psychologist and social worker completed a questionnaire addressing Plaintiff's work-related limitations caused by her psychiatric symptoms. In this case, the ALJ stated that she gave "significant weight" to the opinions of Plaintiff's social worker and treating psychiatrist, but did not give weight to the portions of the opinions that specifically dealt with Plaintiff's ability to work, and

4

concluded that Plaintiff's mental disorders did not rise to the level of severe impairment.

"A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record." *Gudgel*, 345 F.3d at 470 (citing 20 C.F.R. § 404.1527(d)(2)); *see also Hamilton v. Colvin*, 525 F. App'x 433, 439 (7th Cir. 2013) ("While the ALJ is right that the ultimate question of disability is reserved to the Commissioner, a treating physician's opinion that a claimant is disabled 'must not be disregarded.'") (quoting SSR 96–5p, 1996 WL 374183, at *5 (July 2, 1996)) (citing 20 C.F.R. § 416.927(e)(2)); *Roddy*, 705 F.3d at 636 ("Even though the ALJ was not required to give [the treating physician]'s opinion [that the claimant could not handle a full-time job] controlling weight, he was required to provide a sound explanation for his decision to reject it.").

Because the ALJ failed to give controlling weight to Plaintiff's treating providers, she was required to analyze the following factors to describe what weight to give their opinions: the length, nature, and extent of the physician's treatment relationship with the claimant; whether the physician's opinions were sufficiently supported; how consistent the opinion is with the record as a whole; whether the physician specializes in the medical conditions at issue; and other factors, such as the amount of understanding of the disability programs and their evidentiary requirements or the extent to which an acceptable medical source is familiar with other information in the claimant's case. 20 C.F.R. §§ 404.1527(c)(2)(i)-(ii), (c)(3)-(6); *see also Punzio*, 630 F.3d at 710 ("[W]henever an ALJ does reject a treating source's opinion, a sound explanation must be given for that decision.").

In this case, the primary evidence the ALJ refers to in her decision to discount the treating

sources' opinions is that of Plaintiff's daily activities. However, the fact that Plaintiff lives with other people who also have significant health needs and that she has the ability to be "cooperative and friendly" in short medical appointments do not obviously counter the treating sources' notations that Plaintiff has difficulties with maintaining attendance and performing activities on a schedule. *See Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) ("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . and is not held to a minimum standard of performance, as []he would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases."); *see also Punzio*, 630 F.3d at 712 (explaining that a plaintiff's ability to complete activities of daily living does not mean that she can manage the requirements of the workplace).

The ALJ's decision to specifically discount only the portions of the provider statements that address Plaintiff's ability to work, and to use her limited daily activities as the primary reason to do so, raises concerns about whether the ALJ properly weighed the evidence in the record. The Seventh Circuit Court of Appeals has warned ALJs against cherry-picking evidence. "An ALJ cannot rely only on the evidence that supports her opinion." *Yurt v. Colvin*, 758 F.3d 850, 859 (7th Cir. 2014) (quoting *Bates v. Colvin*, 736 F.3d 1093, 1099 (7th Cir. 2013)); *see also Scrogham v. Colvin*, 765 F.3d 685, 698 (7th Cir. 2014) ("[T]he ALJ identified pieces of evidence in the record that supported her conclusion that [the plaintiff] was not disabled, but she ignored related evidence that undermined her conclusion. This 'sound-bite' approach to record evaluation is an impermissible methodology for evaluating the evidence."); *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010)

("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding.").

Not only did the ALJ discount the treating sources' opinions without adequate explanation, but she also failed to explain how she incorporated Plaintiff's mental limitations into the RFC. The RFC is an assessment of what work-related activities the claimant can perform despite her limitations. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); *see also* 20 C.F.R. §§ 404.1545(a)(1); 416.1545(a)(1). In evaluating a claimant's RFC, an ALJ is expected to take into consideration all of the relevant evidence, including both medical and non-medical evidence. *See* 20 C.F.R. §§ 404.1545(a)(3); 416.945(a)(3). "In determining an individual's RFC, the ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009) (citing S.S.R. 96-8p; *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003)*;*

The ALJ concluded that Plaintiff was mildly limited in concentration, persistence, and pace, but did not explain how she incorporated that limitation into the RFC. *See Jelinek v. Astrue*, 662 F.3d 805, 813-14 (7th Cir. 2011) (concluding that limitations to sedentary and light unskilled work did not "address[] the impact of the mental limitations . . . which . . . limited [the plaintiff]'s ability to maintain regular work attendance, to carry out instructions, and to deal with the stresses of full-time employment"); *Stewart v. Astrue*, 561 F.3d 679, 684-85 (7th Cir. 2009) (rejecting the contention "that the ALJ accounted for [the plaintiff]'s limitations of concentration, persistence, and pace by restricting the inquiry to simple, routine tasks that do not require constant interactions with

7

coworkers or the general public"); *Underwood v. Colvin*, No. 2:11-CV-354-JD-PRC, 2013 WL 2420874, at *2 (N.D. Ind. May 30, 2013) ("While it is true that the ALJ need not specifically include limitations on concentration, persistence and pace in the RFC finding, . . . the requirement that the ALJ 'consider' such limitations has certainly been interpreted to mean that a real 'evaluation' of the effect of those limitations on the claimant's ability to work must take place.").

Indeed, the ALJ did not explain how she incorporated any limitations stemming from Plaintiff's mental disorders into the RFC. "Although [] impairments may not on their own be disabling, that would only justify discounting their severity, not ignoring them altogether. Moreover, . . . an ALJ must consider the combined effects of all of the claimant's impairments, even those that would not be considered severe in isolation." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *see also Martinez v. Astrue*, 630 F.3d 693, 698 (7th Cir. 2011) ("Even if each problem assessed separately were less serious than the evidence indicates, the combination of them might be disabling."); *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008) ("[A]n ALJ is required to consider the aggregate effects of a claimant's impairments, including impairments that, in isolation, are not severe.") (citing 20 C.F.R. § 404.1523; *Golembiewski*, 322 F.3d at 918)). Similarly, as Plaintiff argues, the ALJ also failed to address how she incorporated Plaintiff's migraine headaches into the RFC or explain how they, in combination with her other impairments, affect Plaintiff's ability to work. Also concerning is the ALJ's explanation that she did not include Plaintiff's use of calf braces and a cane in the RFC because they were not prescribed for her. *See Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010) ("Absurdly, the administrative law judge thought it suspicious that the plaintiff uses a cane, when no physician had prescribed a cane. A cane does not require a prescription."). The regulations specifically remind ALJs to take into account that, for example, "[a]n individual

8

may have structured his or her activities to minimize symptoms to a tolerable level by avoiding physical activities . . . that aggravate his or her symptoms." SSR 16-3p, 2016 WL 1119029, at *9 (Mar. 16, 2016) *superseding* SSR 96-7p, 1996 WL 374186, at *8 (Jul. 2, 1996) ("The individual's daily activities may be structured so as to minimize symptoms to a tolerable level or eliminate them entirely, avoiding physical or mental stressors that would exacerbate the symptoms.").

Although medical evidence "may be discounted if it is internally inconsistent or inconsistent with other evidence," *Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995) (citing 20 C.F.R. § 404.1527(c)) (other citations omitted), the ALJ "must provide a 'logical bridge' between the evidence and his conclusions," *O'Connor-Spinner*, 627 F.3d at 618. The ALJ failed to build that logical bridge in this case. The Court is unable to follow the reasoning behind giving "significant weight" to all but the parts of the treating sources' opinions that address Plaintiff's ability to work, without pointing to contrary medical evidence in the record. Nor is it apparent how, or whether, Plaintiff's mental limitations, including her limitations in concentration, persistence, and pace, were incorporated into the RFC, either alone or in combination with her other impairments. On remand, the ALJ is instructed to fully review all of the medical and mental health evidence in the record and to obtain updated information as needed. *See, e.g., Barnett*, 381 F.3d at 669 ("An ALJ has a duty to solicit additional information to flesh out an opinion for which the medical support is not readily discernable.") (citing 20 C.F.R. § 404.1527(c)(3); SSR 96-2p at *4; 20 C.F.R. §§ 404.1512(d)(1), 416.919(b)). She is directed to follow the applicable regulations in determining what limitations Plaintiff experiences, and to fully explain how each of the limitations, alone and in combination, are incorporated into the RFC, including Plaintiff's mental impairments, her migraines, and her use of supportive devices.

**IV. Conclusion**

For the foregoing reasons, the Court hereby **GRANTS** the relief requested in Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 16] and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 28th day of September, 2017.

s/ John E. Martin<br>
MAGISTRATE JUDGE JOHN E. MARTIN<br>
UNITED STATES DISTRICT COURT

cc: All counsel of record